Case number 3090979, Joe Carlson, appellant by Mr. John Fentz v. Lisa Brown et al. in Wal-Mart Stores, Inc., athletes by religion of the Spaniard. Sorry about that. Good morning. I'm John Fentz on behalf of Appellant Joe Carlson. This is an appeal that arises out of a class action brought on behalf of 291,000 Wal-Mart employees across the state of Illinois. And the Wal-Mart employees allege that Wal-Mart failed to pay them – or failed to allow them to take contractually required rest breaks and lunch breaks and also required them to work off the clock and basically required them to provide uncompensated labor. This case was filed nine years ago and progressed along with about 62 other similar class actions all across the nation. This case was also up here once before in front of this court on a denial of class certification back in 2006, and I understand that was fully briefed and awaiting a decision at the time of a nationwide settlement that Wal-Mart decided to enter into in December of 2008. And the main impetus for that settlement was success with the Plaintiffs' Council, and some of the same Plaintiffs' Council that are involved in this case were responsible for in the state of Minnesota where they got a plaintiffs' verdict. It wasn't a full verdict. It wasn't everything they asked for, but they got about 20 percent of the damages they were seeking there. And at that time, shortly thereafter, Wal-Mart decided to settle all of these cases nationwide on practically identical terms. And one of the main terms in all these settlements is a unique structure where there's a floor and a ceiling. The floor is the guaranteed amount that Wal-Mart promises to pay to the class regardless of whether they come forward and claim that money. The ceiling is the maximum amount they'll pay if practically everybody comes forward to claim that money. Did you follow the proper procedures in objecting to a settlement? Your Honor, I came into this case at the briefing stage, at the appeal level. I reviewed the record. I don't mean you personally. I know, but I'm explaining. Yeah, there are issues there, and I'm aware of what the district court did. However, I believe that Ms. Carlson's objection does comply with all the requirements that the court required to be in the notice. And the court struck her objection for two things. The first one was failing to act for the benefit of the class, which is not the test. I believe the court was taking that from the fee agreement that Ms. Carlson signed and then importing that and making that a requirement for the court to have standing to object. But, of course, in order to have standing to object to a class-action settlement, one need only be protecting one's own interests in the case. And there's no duty on behalf of an objector to act in the class' best interest, although Ms. Carlson's objection would have benefited the entire class had the district court agreed with it. And awarded a fee based on the amount actually claimed here or the floor. So who do you represent? Joe Carlson. Period. Period, yes. And I believe case law is pretty clear that an objector's attorney represents only that objector or however many objectors have retained him to object to the settlement. Nonetheless, Mr. Pence, I think Justice Carter had an interesting question, an important question. Where do the proper procedures fall when filing an objection? Well, the procedures that I believe the district court – when the district court referred to failure of proof, I – normally that means failure of proof you're a member of the class. But in this case, I believe the court meant failure to cite to case law and basically submit an objection that was more like a legal filing rather than simply a letter stating that she thought the fees were too high or the amount – I don't know if there was a legal or a factual basis set out for the objection. Factual, you mean? No, a legal or factual basis under the law. I think it was lacking in a legal basis. Whether you need case types in an objection, that's an unsettled question, I believe, in most – because in most cases the – most of the objectors are pro se, and therefore to impose the requirement that you have cites to governing case law would be unfair to most people. Now, do you impose a higher standard on an objector who retains counsel? Possibly, but I don't see why because the same requirements in the notice apply to all objectors, whether they have counsel or not. And I believe that the – that her objection was sufficient to put all the parties and the court on notice of her argument. Although she didn't connect all the dots. She said you should wait until the claims are filed before you award a fee and that the settlement notice is ambiguous because it says 33% of the settlement without saying whether the settlement is 14.5 or 25. The only logical reason for waiting to see what the claims are is because you're going to base the fee on the actual amount claimed. And in my – How do you disperse the fund if you don't know what these charges are? Your Honor, you have to wait until the claims deadline came in past anyway to disperse the fund. So, in other words, you can't send it out until the claims are in. Once the claims are in, you can calculate the fee based on that instantly. It's 33% of whatever the total is. But in Wal-Mart's brief, they state – I believe in page five – they concede that – sorry, page seven of Wal-Mart's brief. They say Opponent is making the same arguments on appeal that she made in her objection, indicating that at least Wal-Mart and Short Class Counsel understood the thrust of Ms. Carlson's objection below. Indeed, they argue against it based on these arguments that they – are raised in every case, which is whether – you know, under Boeing v. Van Gammert, are you required to look at the maximum possible? Or do you look behind that and see, for example, what is the likelihood that that maximum could be attained in this case? For example, what if the parties had said the maximum amount that Wal-Mart can pay out is $40 million? And then Class Counsel asked for a fee of 33% of $40 million. That's $13.3 million. It would have consumed the entire guarantee floor. That maximum number has to have some basis in reality, at least in the opinion of some – of many courts, many federal courts believe that unless that number has some basis in reality, there's a good chance that it could be reached. But you don't look at that, and in fact, the court in California, the Yegley Court, called it a fantasy and a phantom fund. In federal courts, this issue is far from settled, and I believe in Illinois it's an issue of first impression. The Brundage case, which first permitted courts to award attorney's fees based on the percentage of the fund, didn't answer this question. In fact, they cautioned against using the percentage when there is a disparity between what the attorneys get and what the class gets. And since that time, neither the Court of Appeals nor the Supreme Court has addressed the issue of whether this court is going to follow Boeing v. Van Gammer or whether this court is going to follow, for example, the Purdue v. Kenny A case, which just came out, which says the presumably reasonable fee is your load start, and you don't get a multiplier of that unless it's a rare and exceptional case. Let me go to another procedural question. There's an indication that the objection itself was not a timely file. Your Honor, timely? Yes. I don't believe that was raised. I've just reviewed the entire record. I didn't see any indication that it was untimely. There was a fairness hearing, correct? Correct. And you, again, I understand you weren't involved, but your client didn't attend that hearing, correct? That's correct. In fact, he announced it in advance that he wouldn't be attending the hearing. Yes. Was that on file? Your Honor, I have no idea. I wish my client and her counsel below had attended the hearing to make their arguments explicit rather than simply implicit in an objection that moved. How can you willfully choose to miss – you know, not attend a fairness hearing and then come in and object to the fairness of the result? Well, Your Honor, attendance at the fairness hearing in federal courts at least, where I practice mostly, is not required. I believe the notice here in this case said you may attend the fairness hearing, but I think you don't have to. Certainly, with counsel in the case, it would have been far preferable for them to attend the hearing and make these arguments explicit on the records. The court, when it issued its decision, had confronted those arguments and at least made clear the basis of its decision because the court clearly stated at one point in the fairness hearing that it was awarding $8.25 million as a fee, which is one-third. So from that, it's clear that the court put a value on the settlement of $25 million, but the court never stated the basis for that. Did the court do that because it felt that it was compelled to do so by Boeing, or did it do so because it believed that the $25 million maximum would be reached, or because it believed that there was a better-than-50 percent chance that it could be reached? But past experience in these cases has shown, and there's plenty of law review articles and case law discussing this, that the claims rates in these cases range between 2 percent and 10 percent, rarely exceed 10 percent, across a whole range of class actions regardless of how much money is available and regardless of the type of class action. So in this case where – even where the maximum amount available for a long-term employee was $300, it's likely that the majority, over 90 percent of the class members, failed to make claims for that money. And in the case where the average recovery was $86 a class member, and even assuming a 10 percent take rate here, say $30,000, that means the class will receive no more than $2.5 million out of the $14.5 that Walmart has agreed to pay. And that's why in our brief we referred to a 57 percent attorney's fee, or 60 percent if you include the expenses of $500,000. This is more like a lodestar approach. It wasn't a common fund approach. Your Honor, that's what the plaintiffs argued in their brief. But if you look at the record and you look at the fairness hearing, there's no reference to the lodestar. They did put their lodestar in, but nowhere does the court even say I'm awarding $8.25 million, which is their lodestar multiplied by 2. There's no lodestar crosscheck, and then the court, at the fairness hearing, says I'm awarding $8.25 million, which is one-third. And that's all the court said about that. Their lodestar was in, but we submitted in our brief, in our reply brief, that even going on lodestar, the lodestar multiplied by 1.15 would be a reasonable fee in this case under both methods. Because it wouldn't exceed 33 percent of the amount that Wal-Mart is actually paying out rather than the theoretical maximum that they – I hesitate to even say could have paid out because in the world of reality, that was never going to happen. There's never been a 100 percent take rate or anything even approaching 20 percent. Your Honor, is there no further questions? What do you believe our standard of review is in this case? Well, I believe – because this is a class action, and I know that my client below did not put in any data about the claims rate, either in this case or other cases. However, there are references in the objection to the court's fiduciary duty and the burden of the parties who are the proponents of the settlement to give the court enough information so that the court can assure itself that the fee that they're asking for is reasonable and is warranted. And they did not do that. Wal-Mart and the class counsel have resisted disclosing the claims data in every case except for one, and that was the MDL case in Nevada where they did disclose that they would not exceed the floor. Otherwise, they have never disclosed it to any court, and my client's position is the court had a fiduciary duty to do that regardless of whether an objector were in the case or not. And here there was an objector who did articulate the claims made objection that fees should be based on the amount of claims submitted and the amount paid out. I mean, in this case, the applicant for fees put in a lot of evidence, and the objector just objects to the percentage. Right. Basically, that's it. Well – Is that really meeting any burden that you have to – The objector did not meet the burden of proving what the settlement's value is, but then that's not the objector's burden. That would be my response. That burden is on the class counsel and Wal-Mart to come forward and show what's the value of this settlement. And the court never implicitly placed the value of $25 million on it by awarding a one-third fee of $8.25 million, but it never – the court never said how it arrived at that number. Did it just take that number and use it because of the – I believe mistakenly that Boeing v. Van Gammer, the Supreme Court case from 1980 mandates that. I don't believe that's a correct reading of Boeing, and I don't believe it would be binding on this court in any event. It involves federal cases under federal statutes. What about the Brundage case? Brundage – yeah, Brundage permits a percentage fee. And Lovestar. And Lovestar in a case where the percentage would result in an unfair allocation, as I read. That's the caution in Brundage. Don't just use percentage in every case. You've got to look to see whether the class is receiving enough of the overall settlement. In this case, that's why we argue that it should have been Lovestar, and it should not have been an enhancement of two. Because that gives the attorneys 57 percent of the cash. It should have been an enhancement of something more in the order of 1.1 to 1.3, which I think amply rewards class counsel for the work they did in this case. I mean class counsel were involved in some other cases where they had more success, but this case was a denial of class cert on appeal when it settled. And clearly this was not the leverage that drove those settlements. Your time is up. Thank you, Your Honors. Thank you, Mr. Chairman. Ms. Spalding, you represent the plaintiffs, and I understand counsel at Walmart will not be arguing. That's correct, Your Honor. I just want to introduce my co-counsel for the class, Mr. Bridges, and Mr. Glenn Rude, who's here from Rock Island. Your Honor, we are here today on behalf of the class of 291,000 people. That class labored long and hard against Walmart for now almost nine years. We obtained a great result in the face of a loss on the class certification motion below and a pending appeal to this court that was argued two years ago tomorrow, seeking to reverse class certification after we went up to the Supreme Court and got a supervisory order on that issue. I just want to note, counsel for the objector here is attempting to distance himself from the events before the trial court. The record before the trial court demonstrates that before the trial court, both Mr. Bandus, who was then counsel for the objector together with an Illinois lawyer, and Mr. Pence were both tarred by other courts as simply extorting money from the class in connection with leveling these frivolous objections throughout the country. Your Honor, turning to the issues before the court— Well, is he attacking anything other than an attorney at least at this stage? No, Your Honor. He has dropped—the objector here has first waived virtually every objection below, but what few objections were not waived below weren't preserved in their opening—in the opening brief to this court. So there is next to nothing before this court that is properly before the court. The standard here is purely an abuse of discretion standard, and the record is clear. The trial court below exercised its discretion properly and well within the bounds of Illinois case law government in this area in both rejecting the objection and in awarding— to decide a case in the Illinois Supreme Court. So the long and the short of this is— —so far from the record before this court that it's almost impossible to separate out what was in the record that was discussed in the opening argument, and I have few doubts that matters outside the record will find their way into the rebuttal portion of the argument. But they are not part of the record before this court, and I think this court is bound by the record. The standard on appeal here is set out very clearly in the Shortino case. This is not an opportunity for de novo review. In the context of the fee, should the court reach the fee issue, and I would argue that the court here should not even reach the fee issue, objectors are—an appeal may not be used. It's not appropriate to use the appellate process of this court to permit an objector a second opportunity to question reasonableness of the fee, and that is particularly so in this case where the objector failed to use the first opportunity afforded to him by the trial court to contest the reasonableness of the fee. One final point on the standard. Hux v. Rabin, the Illinois Supreme Court Authority, I think from 1967, made it clear that an appellate court should not consider different theories or new questions on appeal that were not raised below because the opportunity to respond to those theories—the parties were deprived of an opportunity to respond, and the trial court was deprived of an opportunity to address the objections because they weren't raised as part of the record below. Can you talk to us about the objection itself and the sufficiency? Certainly. The law in Illinois is clear. Rosen v. Ingersoll-Rand, I also call it the Kryptonite case. In the Rosen case, the court made it very clear that in order to have standing, in order to be a proper party to challenge any aspect of class action settlement, an objector must file a proper objection, comporting with the directions of the trial court below. This objector failed utterly to do that. And the trial court's order rejecting the objections expressly states that. The court below did not reject the objections because of the reputation of counsel as professional objectors. It didn't reject the objection based upon the suspect motive, based upon the extortionate nature of the practice of professional objectors. It rejected the objection because there was no factual basis for it and there was no legal authority cited in support of it. Not a single case, not a single fact. Indeed, it was clear, I think, to the trial court, and I think it's clear to your honors, in reviewing the four pages that the objector put before the trial court, that there was simply – that the objector and her counsel had never looked at the facts of this case. We hear this is part of a nationwide settlement. This case, your honors, settled in its own negotiation, based upon its own merits, based upon the risks presented by Illinois law. The objection in no way addressed the facts of this case, the facts of the settlement of this case, which are not as described to you by objector's counsel. The settlement here contained all kinds of provisions and protections for the class, not the least of which was in the face of the denial of certification and pending appeal that plaintiffs might or might not have prevailed on, we got Walmart to agree to certify the settlement class. But for the efforts of plaintiffs' counsel, this class would get zero, not $25 million for us. Oh, wait a minute. Okay, the class gets – but each individual, they would get zero instead of what, $50? Your Honor, the average amount of the settlement here per class member is $86. $86, and the attorney's fees were – I mean, it seems to me the thrust of this argument is, look, with the settlement, my client can maybe gas up a car and take the family to McDonald's. The lawyers, on the other hand, can buy their own Gulfstream and fly it to Paris and have dinner there. I mean, you see, on its face, this is wrong. Your Honor, I think that objector's counsel overlooks the nine years of work that have gone into this case. The presentation that we made to the trial court, and it was an extensive presentation that was never refuted, addressed, or indeed even read by objector's counsel, made very clear the thousands of hours that went into preserving this case and creating a fund. Now, the nature of class actions, particularly class actions of this type, are that there are small recoveries because what Walmart was doing, allegedly, was to take small amounts of money from lots of small people, lots of people who work every day for a living. Objector here filed a claim, and she said how she was cheated of her rest break time and how she worked off the clock. Her claim was this particular one person who worked at Walmart for over six years, that she missed ten rest breaks. That's two and a half hours of uncompensated time, and an hour she worked off the clock. She's going to be fully compensated under the terms of this settlement. This is not a windfall for class counsel, and it's not a windfall for the class either. I think in both instances- Is there a value to the injunctive relief? Yes. How does one value that? Your Honor, we provided a valuation to the court of the injunctive relief. That was discussed by Tom Waterman, an attorney who served as an expert witness and who submitted an expert report to the court. We believe that this case had- our damage model showed $125 million worth of damages. Because of the way the case played out, we were able to obtain a 20% return in terms of the cash settlement, which we think was very good in a case where we couldn't get it certified. However, we also obtained significant injunctive relief, and the trial court commented on the value of the injunctive relief, particularly for this group of vulnerable people. We valued the injunctive relief at $60 million. We believe that that is a conservative estimate. It is going forward for the five years that the injunctive relief will be in place. The amount of money that we believe Walmart could or would have taken from the members of the class, by virtue of the injunctive relief, they're not going to be able to do that. And the trial court recognized that. Even if you say, okay, $60 million, it's too high a number to value the injunctive relief. So Colin says, is it worth 10%? Is it worth 20% of the conservative number as to which we provided an expert report and a basis for valuing it? The trial court certainly took the injunctive relief into consideration when he made his determination with regard to the fee award. I'm happy to answer questions with regard to the fee award. I do want to go back to the first issue that is before you, which is whether or not an objector is an appropriate party to pursue this particular appeal. I think under Rosen, the failure of the objector to file an objection in accordance with the court's order, the failure of the objector to come to the court or to in any way present her views through counsel, through counsel who have gone around this country and objected everywhere to these settlements. They were familiar with these settlements. They only had to read the record. But they failed to do that. Is there any difference between that? In other words, does that make them bad guys? In other words, is that a fair criticism of their argument to say they filed objections, any more than it would be a fair criticism to say that you filed a class-action lawsuit? No, and I'm not criticizing on that basis. But didn't the trial judge mention that? You know, that somehow, unless you're the messenger and therefore wrong about it. The trial court perhaps mentioned that in the context of denying permissive intervention, an issue that's not before the court because objector waived that issue on appeal. And I think the trial court appropriately considered that in the context of permissive intervention because the class-action rule says to trial court, exercise your discretion not to permit permissive intervention if it's going to harm the class. The court looked at the actions of professional objector's counsel. It looked at the unrefuted findings of courts all around the country that these people were engaged in extortion, that they did not have an interest in the class at heart. And that's an issue, incidentally, that objectors also waive. They didn't appeal that issue. They didn't put anything either before the trial court to refute that or before this court. With regard to your question or your statement that they failed to follow the right procedure, I know I asked your opponent what's a legal and factual foundation for your objection. He objected to the percentage and indicated that was enough. You're saying that procedurally they didn't follow the right procedure that was mandated by or directed to follow by the trial court, correct? That's correct. And specifically, what are you saying they didn't do? They're saying they did enough, and that's all they needed to do. The notice directed to the class, and this was not only mailed to each of the 291,000 class members. It was posted on the website. The court's preliminary order approving the settlements also posted on the website, stipulation of settlements on the website. The notice said, if you want to object to the settlement, you must state the specific reason for each objection, including any legal support the objector wishes to bring to the court's attention, copies of any documentary evidence, and a summary of any testimonial evidence the objector wishes to introduce in support of the objection. Objectors here did nothing. The objection, which is found in the appendix starting at page 48, it's worth a close read. Because on the subject of the fee, there's a single paragraph because essentially all that's before you now is the subject of the fee. If you reach that on the subject of the fee, the only comment is, in any event, the lawyer should have to wait to see how much money is actually distributed to the class before they get their percentage, assuming this gets approved by the court. As Your Honor, I think it was Justice Schmidt, pointed out, how do you know how much is going to be distributed? At the end of the day, the effect of this appeal, with all of the waivers, with all of the materials outside of the record, is to deprive this class of the relief that it took us nine years to obtain on their behalf. This is really nothing more than a holdup at this stage. And the record before the trial court clearly evidenced that. The lack of care, the lack of actual argument with regard to this settlement, with regard to any aspect of this settlement. I just want to finally finish with one comment, which is that in the context of the settlement here, we provided the court with a full record. We provided the court with all of the information with regard to the lodestar. Objectors raised no challenge to the hours, to the rates, to the multiplier sought, to the tasks performed, to the expenses paid out in this case. And the multiplier here of this unchallenged lodestar amount is a two-times multiplier. Under Fiorito, the predecessor case to Brundage, Fiorito says a three-times multiplier is okay to recompense class counsel. The multiplier here was a two-times multiplier. Class counsel remained at risk throughout this matter. What number did they multiply times two? The lodestar in this case, Your Honor, was $4,125,000. And we put a complete record before the court of the nine years – the eight years of work that we had done. There were extensive motions to dismiss contrary to the characterization by objectors that little happened in this case. We litigated the class motion. We had extensive discovery concerning the class motion. We litigated the class motion before the trial court, before this court, before the Supreme Court, back down to this court on appeal, and then extensive proceedings in connection to the settlement. The work that we put into this case does not include work performed by some of us for – in other cases for which this case clearly benefited. The national discovery that was done was used in connection to the class certification motion here and formed the basis for many aspects of the case. You've already got paid on the lower cases, right? That – I wish that were so, Your Honor. Mr. Pence talks about a nationwide settlement. My firm and Mr. Bridger's firm tried to verdict a case in Pennsylvania. That case is still up on appeal with Walmart. There has not been a nationwide settlement of these cases. Well, I guess what I'm – part of your question, what I'm now willing to say is that you'll have a fee – the work you did on those other cases is – you'll see private pension in those cases for your fees. Your Honor, some of those cases will never be recompensed. There was discovery done in various different cases for the benefit of the consortium of plaintiff's cases, if you will. But there was work done in those cases that will never be recompensed because there were not settlements in some of those states. Discovery was taken in states where class certification was denied, and at the end of the day, those cases were dismissed and not settled or resolved at trial. Except for the generic attack on the percentage, there's no objection specifically, factually to ours or any of the basis for the Lone Star amount. Is that right? Not any below. There is nothing in the record in any way challenging the time, the effort, the expenses. In the appellate brief submitted by Mr. Pence, there are references to duplicative time. There is nothing in the record to support that notion, and I can represent to you as a person who did a good deal of this work. We did not duplicate our efforts. We had enough to do it once. If I could just address one. Thank you. Thank you, Ms. Stone. Unless there are other questions. I won't have you sit down this time. Thank you, Your Honor. Let me just address the issue of the Lone Star and the accusation that somehow we're undervaluing class counsel's efforts and services in this case. That's not true. We recognize the nine years of litigation. We recognize all the work they did in this case. That's where the $4.1 million comes from. The way that the delay in payment, I think, is what Ms. Spanger is getting at, that we're not adequately recognizing that. The calculation of their Lone Star was done at their current hourly rates. Those rates are much higher than the rates when this case started. Therefore, the delay in payment is adequately accounted for by the use of their current rates, whether 2009 or whenever the fairness hearing was. They used the rates that were current then. Therefore, the $4.1 million that is their Lone Star is pretty close to a reasonable fee in this case. Now, Ms. Spanger referred to the Fiorito case, which preceded Blunderidge, where you can get up to a three. And I think that's absolutely correct. If they had recovered, for example, $40 million here, they could receive a fee of $12 million, which would be three times their Lone Star, because that would still be a reasonable percentage of the total, and the class would be getting more than their lawyers. But in this case, it was only a $14.5 million monetary recovery, guaranteed recovery. And therefore, I think the fee has to be limited pretty close to what their actual Lone Star is, which is not a penalty. My client is not arguing that that should be imposed on them as a penalty. It's simply a fair fee in light of the results obtained here. Class counsel concedes that this was not the greatest result because this case was on a litigation footing, much weaker than a lot of these other cases where they did do much better and got a much higher multiplier. And as you asked, Justice Smith, they were paid for these other cases, sometimes at much higher rates than their actual Lone Star. There are some cases they may lose and get nothing, but that's the nature of this business. They shouldn't make up fees from these other cases. In this case, at the expense of Illinois residents who should get – you know, Ms. Spangler said in a brief, well, this is all only about $3 million. Well, $3 million is 20% – more than 20% of the overall cash value here. So that's important. $3 million that will be automatically distributed to these class members, including the ones who didn't make any claims, that could double what they're currently going to get out of the settlement. I have no further questions. Thank you, Mr. Benson. Thank you both for your arguments today. We do appreciate it. We will take this matter under advisement and get back to you with a written disposition eventually. Okay. Now I think – I think we'll –